THOMAS GALLAGHER, PLAINTIFF BELOW, DEFENDANT IN ERROR, v. HORACE McBRIDE, DEFENDANT BELOW, PLAINTIFF IN ERROR.

*Argued February 27, 1899—Decided June 12, 1899.*

1. A nonsuit will not be granted where the question is whether the engagement upon which the action is founded is an original one, or collateral to pay the debt of another, where there are facts in evidence in the case of the plaintiff, some of which tend to establish that it was an original promise, and other facts which tend to the establishment only that it was a collateral agreement to pay the debt of another,

and therefore within the statute of frauds. If a reasonable conclusion can be drawn either way, then the character of the agreement, upon proper legal instructions, is for the jury to decide.

2. Where the action of the plaintiff and his right to recovery are founded upon a contract or promise in writing under the statute of frauds, which contract or promise has been lost, and the evidence of the execution and existence of the same is in dispute, it is error for the trial court to refuse to charge, upon request, that the burden of proof is upon the plaintiff to establish the execution and contents of such contract or promise by a preponderance of proof, and for such error the judgment will be reversed and a new trial ordered.

On error to the Hudson Circuit Court.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff below, *James A. Gordon.*

For the defendant below, *William B. Gillmore.*

The opinion of the court was delivered by

LIPPINCOTT, J. This action, the declaration containing only the common counts, is for a balance of $562.63, on an account for groceries and meats, alleged to be due from the defendant to the plaintiff. There is no dispute as to the amount due. The question of the liability of the defendant is the only one involved.

The facts, as they appear in the evidence of the plaintiff, are that the defendant was the guardian of several infant children, whose father was dead, and who were left in the care and custody of the mother, one Mrs. McBride, and lived with her. Some estate was inherited · by these children, out of which they were being supported by the guardian so far as it was available for that purpose.

The plaintiff is a grocer, to whom, after her husband's death, Mrs. McBride applied for credit for provisions, groceries and meats to be furnished her to be used by herself and in the support of her children, to be paid out of the

estate of her deceased husband. The plaintiff testified that he declined to give her credit, and refused to furnish the groceries and meats to her unless the defendant would agree before furnishing the goods to pay for the same. He also testified that the defendant agreed to so pay for the same, and delivered to him an order in writing to furnish Mrs. McBride the groceries and meats, and that he would pay the bills. The plaintiff claims that upon this agreement or order he furnished these goods to Mrs. McBride for over four years. The bills or statements of the goods so furnished were at short intervals presented to the defendant who paid them from time to time, leaving the balance claimed due and unpaid.

The plaintiff testified that the written order had been lost, and thereupon he, over objection by the defendant, testified to its contents, that it was signed by the defendant and read as follows: "Mr. Gallagher, furnish Mrs. McBride, widow of the late Dr. McBride, with groceries and meat, and I will pay the bill." He says he did not say "I will pay the bill if she does not pay it." He testified that the items were put on certain pages of a book under the name of Mrs. McBride, and statements of the account handed to the defendant for his inspection and payment. The bills were paid until the property of the children failed to bring in sufficient for that purpose. A mortgage was given to pay a portion of it. The plaintiff testified that after this payment was made the defendant told him to let the bill run on and he would pay it, that it could run until he sold some property.

The plaintiff, after a time, and after the bills amounted to quite a large sum, purchased of the defendant, as the guardian of said children, a parcel of land and premises belonging to them, which was sold by order of the Court of Chancery, for the sum of $4,200. When the deed therefor was delivered, the defendant delivered to the plaintiff a statement or agreement in writing signed by him reciting this sale, and that the plaintiff out of the consideration was to pay the taxes, assessments, water rents and a mortgage on the property, also $75 costs and expenses of proceedings in Chancery to obtain the

sale, and " is to credit the balance of such purchase-money on account of the bill for groceries sold by him to me as such guardian." Also, it was stipulated in this agreement that " said Gallagher also agrees to extend the time of payment of the balance of said bill for groceries for the period of three months from the date thereof." This agreement is signed by both the plaintiff and the defendant.

This evidence on the part of the plaintiff was sufficient to prevent the motion for nonsuit being granted. The motion was based on two grounds—*first*, the promise of the defendant, if any existed, was to pay the debt of another within the statute of frauds, and that no writing or written memorandum had been produced ; and *secondly*, that if proved it was a special contract of guaranty, and that no such contract could be enforced under the common counts.

The determination of the latter ground needs no discussion, for, as the case stood at this time, a motion to amend upon proper terms would have prevailed, and as the case stands now, with the evidence of the defence all fully produced, an amendment could now be made without any prejudice whatever to the defendant. On error upon exception to the refusal to nonsuit, the whole case will be examined, and the whole case of both parties being before the court, the pleading can be amended so as to have the substantial question in dispute settled, and therefore, if the case turned upon the point whether the basis of recovery was upon an original or collateral obligation, the pleadings could be reframed so as to dispose of that question.

Neither upon the other ground can this motion prevail, for, under the evidence of the plaintiff, it was a fair question to be submitted to the jury, whether an original liability of the defendant had not been established. The contention of the plaintiff was that, by virtue of the agreement between the plaintiff and defendant, the goods were sold to the defendant, and at his request delivered to Mrs. McBride. This is at least an inference which was within the province of the jury to draw from the evidence. The evidence of his refusal to

sell to Mrs. McBride upon her credit at this point of the case was undisputed; so, too, was the fact that the engagement was, on the part of the defendant, that they should be furnished her upon his credit, and that, in accordance with this engagement, the bills were presented to and partly paid by the defendant, with an agreement to pay the balance upon forbearance. These facts tend strongly to show that the undertaking of the defendant was an original one, and that he was the person to whom credit was given, and that he was the original debtor to the plaintiff, and the credit being given to him, the promise to pay was not within the statute of frauds. *Scudder* v. *Ward*, 1 *South.* 249; *Hetfield* v. *Dow*, 3 *Dutcher* 440; *Hazeltine* v. *Wilson*, 26 *Vroom* 250; *Chesebrough* v. *Tirrill*, 32 *Id.* 628. Even if the evidence tended to show a collateral promise or that such an inference could be drawn from the facts, still that would not avail to take the question from the jury. The fact that the goods, when furnished, were set down in the books or on the statements of the account of the plaintiff in the name of Mrs. McBride, would not suffice to take the case from the jury. It would still be a question for the jury to determine to whom the credit was actually given.

This conclusion entirely obviates the necessity of considering whether the written memorandum or promise proved by the plaintiff was a sufficient contract under the statute of frauds to constitute a binding obligation on the part of the defendant to pay the debt of another. Whether the undertaking was an original or collateral one was for the jury, and this position being taken prevented a nonsuit.

No error has been discovered in the admission or rejection of evidence in the case of the plaintiff.

The court has considered the assignment of error upon the admission of evidence of the loss of the written promise of the defendant for the groceries and meats furnished Mrs. McBride. The loss was distinctly proved, and the secondary evidence to establish its contents was rightfully admitted under the general rules of evidence. The defendant admitted

that some written paper had been signed by him, but denied that it was of the character which the plaintiff asserted. The evidence of the execution and existence of this writing, its loss, and the contents thereof, was admissible to show the actual engagement of the defendant, aside from its admissibility to establish a written collateral promise under the statute of frauds.

But the learned trial judge in his charge submitted the case to the jury upon the question of the existence of a written promise by the defendant signed by him to pay for the groceries and meat supplied Mrs. McBride at the time they were furnished. The charge states distinctly that the plaintiff founds his case on the ground that there was this written promise by the defendant, and if that be found not to have been made by the defendant, the jury must find for the defendant. Presumably, the case must have been tried before the jury upon this basis, for there appears no exception by the plaintiff to this statement in the charge.

It will be perceived that the plaintiff asserted in his evidence that a promise in writing was made and signed by the defendant of this character. The defendant testified on the defence that he never made or signed any such promise; he testified that Mr. Gallagher sent Mrs. McBride to him to obtain information of whether he had been appointed guardian of the children, and that he, in response, took a piece of paper and wrote on it as follows:

"*Mr. Thomas Gallagher:*

"DEAR SIR—I have been appointed guardian of these children."

He swears that this is all the paper contained, and that it was the only paper received by Mr. Gallagher as coming from him. He says that he only promised to pay the bills from moneys received from the estate of the children, as their guardian, and not otherwise.

It will be seen that between the plaintiff and the defendant

there existed a clear conflict of evidence upon the question whether the defendant gave a written promise to pay, and it presented a question for the jury to determine.

The defendant, under this evidence, made the following request, to wit, "On the question whether the defendant did give a written memorandum or contract promising to pay, the jury must find for the defendant, unless they believe there is a preponderance of evidence that he did sign such a written memorandum or contract." This request was repeated, in part, in another request and refused, and, by an examination of the whole charge, it will be seen that nowhere in it is there any reference made to the legal rule of proof that the burden is upon the plaintiff to establish the essential elements of recovery by a preponderance of proof.

In this refusal to charge this request there was judicial error. The defendant was entitled, upon request, to have stated to the jury the rule of legal proof necessary to establish the case of plaintiff, and the principle that the fact or facts necessary and essential to a recovery by the plaintiff must be established in the mind of the jury by a preponderance of evidence is such an elementary one, that it is concluded that in the haste of the trial the error was inadvertently committed. Whether the cause could have been submitted upon some other basis need not be considered. The case was submitted to the jury upon the basis that the engagement of the defendant, whatever it was, was one collateral in its character, and upon that basis the question for the jury to determine was whether there was such an engagement or promise in writing. On this question the burden of proof rested upon the plaintiff to establish such written contract or promise by a preponderance of evidence, and this was the legal rule of proof to be applied by the jury to the facts in order to reach a conclusion sustainable in law.

If the evidence introduced and submitted to the jury left their minds in doubt upon this question, the verdict should have been for the defendant. If the evidence was evenly balanced, then the case was in the same position at the con-

clusion as it was in the beginning, and it must go against the party who has the burden. He who asserts a fact essential to a recovery must prove it by a preponderance of evidence, or, in other words, the preponderance of proof must be in his favor. 1 *Best Ev.* (*Morgan's notes*), *p.* 494, §§ 265, 275; *McGilvy Ev.*, § 31; *L. & N. R. R. Co.* v. *Binion*, 98 *Ala.* 570, 574; *Thomp. Tr.*, § 1975; *Lowe* v. *Massey*, 62 *Ill.* 47; *Prichard* v. *Hopkins*, 52 *Iowa* 120. See cases, *Stew. Dig., tit.* "*Evidence,*" *p.* 481. An erroneous instruction as to the burden of proof to the jury is ground for new trial. 2 *Best Ev.* (*Morgan's notes*), § 638, and cases cited.

The request should have been charged to the jury, and for this error the judgment must be reversed and a *venire de novo* awarded.